UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARLOS COLLINS,

                Petitioner,

                                 CASE NO. 2:10-CV-12976
v.                              HONORABLE GEORGE CARAM STEEH
                               UNITED STATES DISTRICT JUDGE
RANDALL HAAS,

                Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS

      Carlos Collins, ("petitioner"), confined at the Cotton Correctional Facility in

Jackson, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C.

§ 2254.  In his application, filed by attorney Laura Kathleen Sutton, petitioner challenges

his conviction for first-degree felony murder, M.C.L.A. 750.316(1)(b); second-degree

murder, M.C.L.A. 750.317; armed robbery, M.C.L.A. 750.529; felon in possession of a

firearm, M.C.L.A. 750.224f; and possession of a firearm in the commission of a felony,

third-offense, M.C.L.A. 750.227b.  For the reasons stated below, the petition for writ of

habeas corpus is DENIED. [1]

### I.  Background

      Petitioner was convicted following a jury trial in the Wayne County Circuit Court.

This Court recites verbatim the relevant facts relied upon by the Michigan Court of

---

[1]  The second-degree murder conviction was merged at sentencing with the first-degree felony murder conviction.

Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Collins's convictions arise from events that transpired in Lula Vaughn's residence on June 17, 2006, [2] that resulted in the fatal shooting death of Claude "Main" Marshall, Jr. Vaughn, Marshall, and Collins sat together at Vaughn's kitchen table for about 30 minutes that day; each drank an eight-ounce glass of beer and each smoked one rock of crack cocaine, which Marshall had brought.  Vaughn had known Marshall for about 17 years and Collins for about two years at the time of the incident, and had been romantically involved with Collins sometime in the past for about two or three months.  After Vaughn, Marshall, and Collins smoked the crack cocaine, Marshall and Collins left Vaughn's apartment for about 20 minutes, during which time they obtained additional crack cocaine and heroin.
>
> Marshall and Collins rejoined Vaughn at her kitchen table, and Vaughn inhaled the heroin that Collins offered to her.  Marshall declined to try the heroin, and Collins refused to take the heroin.  Vaughn testified that she felt the effects of the heroin immediately, but supposed that something was wrong with the heroin because her head fell down upon her kitchen table.  According to Vaughn, she could still see at that point; however, "it seemed like things were going, started to go in slow motion to me."  Vaughn stated that she was able to hear, but she described the sounds as "blurred," and "it seemed like it was far away, you know, like an echo."
>
> While Vaughn's head was resting on the table, Vaughn testified that she heard Collins tell Marshall to stand up, empty his pockets, and place the items on the table.  Vaughn heard the sound of change and keys hitting the table.  At that point, Vaughn raised her head, and asked Collins why he was searching Marshall.  Collins did not respond to Vaughn's question.  Vaughn testified that while she was attempting to push herself away from the table

---

[2]  Vaughn, the sole witness to the events leading to Marshall's death, did not testify with certainty regarding whether the events took place on Friday, June 16, 2006, or Saturday, June 17, 2006.  While the events relevant to this case were taking place, Vaughn was admittedly under the influence of alcohol, crack cocaine, heroin, and subsequently, a prescription sleep aid.  As explained in more detail below, Vaughn reported Marshall's death to the police on Sunday, June 18, 2006, and stated to the police that Marshal had been dead for two days.  However, before trial, the trial court granted defendant's motion for a bill of particulars, and ruled that the bill of particulars would reflect that the approximate time of death was 8:00 p.m., on Saturday, June 17, 2006.  Accordingly, to avoid confusion, we will hereinafter refer to the date of the incident as Saturday, June 17, 2006. (Footnote original).

in order to see what was happening, Marshall was sitting at the table, and repeatedly asked, "what's up?"  In response, Collins told Marshall to leave Vaughn's apartment.  Vaughn then heard, but did not see, what she believed was a pistol being cocked.

At that point, Vaughn was attempting to get up, and was pushing herself back from her kitchen table.  Also at this point, Marshall and Collins had left the table, and were engaged in a physical altercation behind Vaughn.  Vaughn asked Collins why he told Marshall to leave, but Collins did not respond. According to Vaughn, she pushed herself back from the table, and then she heard a gunshot.  Vaughn testified that although she continued to feel the effects of the heroin, and thus was unsure of the timing, she believed that she heard the gunshot soon after the altercation between Marshall and Collins began.  After she heard the gunshot, Vaughn once again attempted to push herself away from the table, but instead, fell onto the kitchen floor, and lost consciousness.

Vaughn testified that she did not know how long she remained on the floor, or remained unconscious.  However, when she regained consciousness, Vaughn noticed that Collins had gone, and Marshall was lying on the floor near Vaughn's front door.  Vaughn also noticed a blood stain on the wall. The objects Vaughn had previously heard falling on her kitchen table were gone.  Although Vaughn was not certain that Marshall was dead at that point, she eventually covered Marshall with a sheet.  However, Vaughn decided not to cover Marshall's face with the sheet in case he was still alive.  Although Vaughn testified that she continued to feel the effects of the crack cocaine and heroin, she took three or four doctor-prescribed sleeping pills and fell asleep on her couch.

Vaughn alleged that she awoke sometime during the night when her telephone rang.  Vaughn answered the telephone and spoke to her sister, Norma.  Norma asked Vaughn what was wrong, and Vaughn responded that nothing was wrong, although Vaughn testified that Marshall's body was lying on her floor at that time.  Sometime later, Vaughn's sister Ruby telephoned Vaughn.  Vaughn did not know the interval of time between the telephone call from Norma and the telephone call from Ruby because, at that point, Vaughn continued to have difficulty estimating periods of time.

Ruby also asked Vaughn what was wrong.  Vaughn denied that anything was wrong.  However, Ruby insisted that something was wrong, and Vaughn's nephew, who took the telephone from Ruby, demanded that Vaughn tell him what was wrong.  Vaughn then told him that Marshall was lying on her floor and that he had possibly died. When Vaughn's nephew asked Vaughn how

long Marshall had been lying on the floor, Vaughn responded that Marshall had been lying on her floor for two days. At trial, Vaughn testified that she did not actually know that Marshall had been lying on her floor for two days because it was still difficult for her to estimate time intervals.

Sometime thereafter, Norma and Vaughn's nephew arrived at Vaughn's apartment door, but did not enter. Norma asked Vaughn if she had called the police. Vaughn responded that she had; but in fact, Vaughn had not called the police at that point. Between the time Norma and Vaughn's nephew left the apartment building and the time Vaughn telephoned the police, Vaughn had washed the bloodstain off of her apartment wall. Vaughn explained that she washed the blood from the wall "[b]ecause I didn't want no one to come in and see my house in a mess like that." When the police arrived at Vaughn's apartment, according to Vaughn, she was still feeling the effects of the drugs she had taken. Vaughn described her mood at the time as "terrorized."

When the police asked how long Marshall had been dead, Vaughn told the police that Marshall had been lying on her floor for two days. Vaughn testified at trial that she waited to call the police because she "couldn't accept the fact that [Marshall] was dead." Further, Vaughn testified that she cleaned the blood from her wall because she was in shock. A police officer on the scene testified that Vaughn told her that she washed the blood off of her wall because Vaughn could not stand the sight of it.

At trial, Vaughn acknowledged that she falsely told the police that she did not report the homicide sooner because Collins had threatened her. Vaughn testified that she became afraid because she realized that she was a witness to a homicide. According to Vaughn, she asked the police if one of the officers could stay with her because Collins told her that he would return and she was afraid, but the police officer told her that an officer could not stay.

The Detroit police officer dispatched to Vaughn's apartment on June 18, 2006, testified that, pursuant to his investigation, he did not find any firearm evidence. The officer noticed a very faint red smear on the north wall of Vaughn's apartment. Although the officer attempted to obtain fingerprints, he was unable to find any usable fingerprints.

At trial, Assistant Wayne County Medical Examiner Leigh Hlavaty testified that she performed an autopsy on Marshall and determined that Marshall had been dead for one to three days. Hlavaty also observed that Marshall had sustained a contact gunshot wound to his left upper chest. A deformed, jacketed bullet was recovered from Marshall's body. Marshall's death was

ruled a homicide on the basis of information from the police that Marshall did not pull the trigger of the gun that caused the contact gunshot wound. Hlavaty performed a toxicological analysis of Marshall's body and found the presence of alcohol and cocaine.

Police officer David Pauch testified that he analyzed the bullet recovered from Marshall's body during the autopsy and identified it as a .40 or 10 mm-caliber bullet. Pauch testified that a .40 caliber cartridge is intended for use in semi-automatic pistols, as opposed to revolvers.

Darryl Thomas, an inmate of the Wayne County Jail at the time of trial, testified that he met Collins in jail after Collins was arrested for the homicide. According to Thomas, Collins told him that Collins had visited his father and then decided to visit a woman who lived in the same apartment building. Thomas testified that Collins told him that the persons present in the apartment started to drink and smoke crack cocaine, and Collins decided to rob a man who was present. Collins stated that he told "the guy" not to move during the course of the robbery, and when "the guy" failed to comply with Collins's order, Collins shot him with either a .40 or .45 caliber pistol. Thomas recalled that Collins told him that, after he shot the victim, he searched the victim's pockets. When Thomas asked Collins how the woman reacted to the situation, Collins responded that the woman "just looked up and looked around." Thomas testified that Collins told him that he left the apartment after the robbery and shooting, shaved his beard, and was eventually arrested while visiting a patient at a hospital.

At the close of the prosecution's case-in-chief, the parties stipulated to reduce the charge of first-degree premeditated murder to second-degree murder because there was no evidence that Collins's killing of Marshall was premeditated. Collins then brought a motion for a directed verdict on the remaining first-degree felony murder, second-degree murder, armed robbery, and firearms charges. Trial court ruled that the prosecution presented sufficient evidence with regard to the remaining charges for the case to be submitted to the jury, and therefore denied Collins's motion for a directed verdict. Following the denial of Collins's motion for a directed verdict, Collins declined to present any evidence. The jury found Collins guilty of the first-degree felony murder, second-degree murder, armed robbery, felon in possession of a firearm, and felony-firearm charges. Collins now appeals.

*People v. Collins,* No. 277098, * 1-4 (Mich.Ct.App. August 21, 2008).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 483 Mich. 977, 764 N.W.2d 231 (2009); *reconsideration den.* 484 Mich. 873, 769 N.W.2d 688 (2009).

Petitioner filed a petition for writ of habeas corpus, which was held in abeyance while petitioner pursued additional post-conviction remedies in the state courts. *Collins v. Palmer*, No. 10-CV-12976; 2010 WL 5464274 (E.D.Mich. Dec 30, 2010).

Petitioner filed a post-conviction motion for relief from judgment, which was denied. *People v. Collins,* No. 06-008379-01 (Third Circuit Court of Michigan-Criminal Division, December 19, 2011). The Michigan appellate courts denied petitioner leave to appeal. *People v. Collins,* No. 310815 (Mich.Ct.App. November 30, 2012); *lv. den.* 495 Mich. 851, 835 N.W.2d 579 (2013).

On November 13, 2013, the Court granted petitioner's motion to lift the stay and permitted him to file an amended habeas petition. In his original and amended habeas petitions, petitioner seeks habeas relief on the following grounds:

> I. The trial court erred in denying the petitioner's motion for directed verdict, as the evidence viewed most favorably to the prosecution was insufficient to support the jury's verdict.
>
> II. The issue of credibility was "closely drawn." The court committed reversible error by failing to give a cautionary instruction.
>
> III. Petitioner was denied his due process right to a fair trial where the prosecutor presented evidence that his witness was "truthful."
>
> IV. The trial court violated Petitioner's double jeopardy rights.
>
> V. Carlos Collins was denied the effective assistance of trial counsel when counsel's total trial performance is considered.
>
> VI. Carlos Collins is entitled to habeas relief because he was denied his right to the effective assistance of counsel on his direct appeal.

-6-

## II.  Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody

pursuant to the judgment of a State court shall not be granted with respect to any claim

that was adjudicated on the merits in State court proceedings unless the adjudication of

the claim–

> (1)  resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding.

28 U.S.C. §2254(d); *Harpster v. State of Ohio*, 128 F.3d 322, 326 (6th Cir. 1997).

A decision of a state court is "contrary to" clearly established federal law if the

state court arrives at a conclusion opposite to that reached by the Supreme Court on a

question of law or if the state court decides a case differently than the Supreme Court

has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-

06 (2000).  An "unreasonable application" occurs when "a state court decision

unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."

*Id.* at 409.  A federal habeas court may not "issue the writ simply because that court

concludes in its independent judgment that the relevant state-court decision applied

clearly established federal law erroneously or incorrectly." *Id.* at 410-11.  Additionally,

"[A] state court's determination that a claim lacks merit precludes federal habeas relief

so long as 'fairminded jurists could disagree' on the correctness of the state court's

decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v.

Alvarado*, 541 U.S. 652, 664 (2004)).

### III.  Discussion

**A.  Claim # 1.  The sufficiency of evidence claim.**

Petitioner contends that the trial court erred in denying his motion for a directed verdict because there was insufficient evidence presented to convict him of first-degree felony murder and armed robbery. [3]

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970).  But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim.  Instead, a federal court may

---

[3]  Petitioner's arguments regarding the trial court's failure to direct a verdict of acquittal should be construed by a reviewing court as an attack on the sufficiency of evidence to convict.  *See e.g. United States v. Cope,* 312 F.3d 757, 778 (6th Cir. 2002).

grant habeas relief only if the state court decision was an objectively unreasonable

application of the *Jackson* standard. *See Cavazos v. Smith,* 132 S. Ct. 2, 4 (2011).

"Because rational people can sometimes disagree, the inevitable consequence of this

settled law is that judges will sometimes encounter convictions that they believe to be

mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas

court reviewing a state court conviction, "the only question under *Jackson* is whether

that finding was so insupportable as to fall below the threshold of bare rationality."

*Coleman v. Johnson*, 132 S.Ct. 2060, 2065 (2012).

Finally, on habeas review, a federal court does not reweigh the evidence or

redetermine the credibility of the witnesses whose demeanor was observed at trial.

*Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the factfinder to

weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v.

Morris*, 972 F.2d 675, 679 (6th Cir. 1992). A habeas court therefore must defer to the

fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*,

319 F.3d 780, 788 (6th Cir. 2003).

Under Michigan law, the elements of first-degree felony murder are:

(1) the killing of a human being;
(2) with an intent to kill, to do great bodily harm, or to create a high risk of
death or great bodily harm with knowledge that death or great bodily harm
is the probable result (i.e., malice);
(3) while committing, attempting to commit, or assisting in the commission
of one of the felonies enumerated in the felony murder statute.

*Matthews v. Abramajtys,* 319 F.3d at 789 (citing to *People v. Carines*, 460 Mich.
750, 759, 597 N.W. 2d 130 (1999)).

The Michigan Supreme Court has indicated that "[A] jury can properly infer

malice from evidence that a defendant set in motion a force likely to cause death or

great bodily harm." *People v. Aaron*, 409 Mich. 672, 729, 299 N.W.2d 304 (1980); *See also Carines,* 460 Mich. at 759 (internal citation omitted).   "Malice may also be inferred from the use of a deadly weapon." *Carines,* 460 Mich. at 759.

The elements of armed robbery under Michigan law are: (1) an assault, and (2) a felonious taking of property from the victim's presence or person, (3) while the defendant is armed with a weapon described in the statute. *See Lovely v. Jackson,* 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004)(citing M.C.L.A. 750.529; *People v. Allen*, 201 Mich. App. 98, 100; 505 N.W. 2d 869 (1993)).

As the Michigan Court of Appeals indicated in rejecting petitioner's claim, *See Collins,* No. 277098, Slip. Op. at * 6, there was sufficient evidence to support petitioner's convictions for first-degree felony murder and armed robbery.   Lula Vaughn testified that petitioner and Marshall were fighting.   Vaughn heard petitioner order the victim to stand up, empty his pockets, and place the items in his pockets on her kitchen table.   Vaughn testified that the items that the victim removed from his pockets were later missing from her apartment.   During the altercation between petitioner and the victim, Vaughn heard a gunshot.   Vaughn lost consciousness soon after hearing the gunshot, but when she awoke, petitioner had left her apartment, the victim was lying on her floor, and a bloodstain was on her wall.   Vaughn positively identified petitioner at trial as being in her apartment on the night of the victim's death.   No one else was present at her apartment that night.   The medical examiner testified that the victim died from a single contact gunshot wound to the chest and that he had been dead one to three days.   Petitioner told Darryl Thomas that he had decided to rob a man who was present at a woman's apartment.   Petitioner informed Thomas that he had shot the victim with either a .40 or

.45 caliber handgun.  Petitioner indicated that he shot the victim when he disregarded petitioner's order not to move.  Petitioner indicated that he searched the victim's pockets after shooting him.  Officer Pauch testified that a .40 caliber or 10 mm caliber bullet was recovered from the victim's body.  This evidence was sufficient for a rational trier of fact to conclude that the elements of first-degree felony murder and armed robbery had been proven beyond a reasonable doubt.

To the extent that petitioner attacks the credibility of the witnesses, he would not be entitled to habeas relief.  Attacks on witness credibility are simply challenges to the quality of the prosecution's evidence, and not to the sufficiency of the evidence.  *Martin v. Mitchell,* 280 F.3d 594, 618 (6th Cir. 2002).  An assessment of the credibility of witnesses is therefore generally beyond the scope of federal habeas review of sufficiency of evidence claims.  *Gall v. Parker*, 231 F.3d 265, 286 (6th Cir. 2000).  The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim. *Id.* Petitioner is not entitled to habeas relief on his first claim.

**B.  Claim # 2.  The jury instruction claim.**

Petitioner claims that the trial court erred in failing to give the jurors a cautionary instruction on accomplice testimony.  Petitioner contends that he was entitled to this instruction because Vaughn was an accomplice and this was a credibility contest between Vaughn and himself. [4]

---

[4]  Respondent contends that petitioner's second claim is procedurally defaulted because petitioner failed to object at trial.  Petitioner contends as part of his fifth claim that trial counsel was ineffective for failing to request an accomplice instruction.  Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).  Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claim, it would be easier to consider the merits of this claim. *See Cameron v. Birkett*, 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal.  The question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned," and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbee*, 431 U.S. 145, 154-155 (1977).  The challenged instruction must not judged in isolation but must be considered in the context of the entire jury charge. *Jones v. United* States, 527 U.S. 373, 391 (1999).

The Michigan Court of Appeals rejected petitioner's claim, in part, because there was no evidence that Vaughn assisted petitioner in the commission of the crime and her testimony was corroborated by Thomas' testimony.  *Collins,* Slip. Op. at * 9.  The Michigan Court of Appeals further noted that petitioner's counsel attacked Vaughn's credibility through "vigorous cross-examination" and in his closing argument.  During closing argument, counsel specifically argued to the jurors that they needed to ask whether a witness had a special reason to lie or to tell the truth.  The trial court judge instructed the jurors on judging witness credibility and specifically instructed them to judge a witness's credibility based on whether the witness had a special reason to lie or to tell the truth.  The judge also instructed the jurors to consider whether the witness had any bias or prejudice or interest in the outcome of the case. *Id., at * 10.

The Sixth Circuit has held, even on direct appeals from federal criminal trials, that a trial court's failure to give a special cautionary instruction on accomplice testimony is

-12-

not reversible error, so long as the court has given the jury a general instruction on witness credibility and the various considerations that it should take into account in weighing the testimony of various witnesses.  *See United States v. Carr*, 5 F.3d 986, 992 (6th Cir. 1993); *see also United States v. Bucheit,* 134 Fed. Appx. 842, 859 (6th Cir. 2005)(failure to give accomplice instruction not reversible error); *United States v. Allgood*, 45 Fed. Appx. 407, 412 (6th Cir. 2002)("While it is the preferred practice to give a cautionary instruction regarding the possible unreliability of accomplice testimony, we have not held that such an instruction is required for a jury to be 'properly cautioned.'"); *Scott v. Mitchell,* 209 F.3d 854, 883 (6th Cir. 2000)("We have since followed *Carr* in not requiring accomplice instructions as a general matter").

Federal habeas review of jury instruction claims arising out of a state court prosecution is even more deferential than direct review by a federal appellate court of a federal criminal conviction.  In this case, the state trial court's refusal to specifically instruct the jury regarding the credibility of accomplice witnesses did not violate Petitioner's right to due process, in light of the fact that the general instructions on witness credibility alerted the jury to the various considerations that it should take into account in weighing testimony, giving the jury an ample basis for rejecting the testimony of Ms. Vaughn if it had chosen to do so. *See Latimer v. Burt,* 98 Fed. Appx. 427, 432-33 (6th Cir. 2004).  Moreover, in light of the evidence presented at trial, the jury had sufficient evidence to assess Vaughn's credibility and her possible motivations for lying. Therefore, the trial court's failure to instruct the jury more specifically on the testimony of accomplices did not deprive petitioner of a fair trial or due process of law.  *See Grant v.*

*Rivers,* 920 F. Supp. 769, 784 (E.D. Mich. 1996).  Petitioner is not entitled to habeas relief on his second claim.

### C.  Claim # 3.  The prosecutorial misconduct claim.

Petitioner contends that he was denied a fair trial because of prosecutorial misconduct. [5]

A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances.  *Donnelly v. DeChristoforo*, 416 U.S. at 643-45.  In order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012)(quoting *Harrington*, 131 S. Ct. at 786–87).

Petitioner claims that the prosecutor committed misconduct by eliciting testimony from Darryl Thomas that he was testifying against petitioner as part of a plea bargain

---

[5]  Respondent contends that petitioner's third claim is also procedurally defaulted because petitioner failed to object at trial.  Petitioner as part of his fifth claim alleges that trial counsel was ineffective for failing to object to the alleged misconduct.  Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claim, it would be easier to consider the merits of this claim. *Cameron v. Birkett,* 348 F. Supp. 2d at 836.

which called for him to "testify truthfully" against petitioner.  The prosecutor also elicited testimony from Thomas that if he did not tell the truth, the prosecutor could revoke the plea bargain.  Petitioner claims that the prosecutor's actions amounted to improper vouching.

A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses, because such personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir. 1999)(internal citations omitted).  The test for improper vouching for a witness is whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility.  *United States v. Causey*, 834 F.2d 1277, 1283 (6th Cir. 1987).  "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony."  *See United States v. Francis,* 170 F.3d 546, 550 (6th Cir. 1999)(internal citations omitted).  It is worth noting, however, that the Sixth Circuit has never granted habeas relief for improper vouching.  *Byrd v. Collins,* 209 F.3d 486, 537 and n. 43 (6th Cir. 2000).  Even on direct appeal from a federal conviction, the Sixth Circuit has held that to constitute error, a prosecutor's alleged misconduct of arguing his personal belief, in a witness' credibility or in a defendant's guilt, must be flagrant and not isolated. *See United States v. Humphrey,* 287 F.3d 422, 433 (6th Cir. 2002).

-15-

In the present case, even if the prosecutor improperly vouched for Thomas by questioning him about his obligation to provide truthful testimony, the prosecutor's conduct was not flagrant and thus did not violate petitioner's due process rights. *See U.S. v. Beard,* 318 Fed. Appx. 323, 327 (6th Cir. 2008).  Moreover, any alleged vouching for the credibility of Thomas did not rise to the level of a due process violation, in light of the fact that the jury was informed by the judge several times that the prosecutor's questions, comments, and arguments were not evidence and the judge instructed the jury as to the factors to consider in evaluating the credibility of the witnesses' testimony. (Tr. 1/31/07, pp. 66, 110-11; 114-16). *Byrd,* 209 F.3d at 537-38. Petitioner's claim is also defeated by the fact that the judge specifically advised the jury that they could consider the plea agreement that Thomas had made to determine Thomas' credibility, bias, or self-interest. (Tr. 1/31/07, pp. 117-18).  Petitioner is not entitled to relief on his third claim.

### D.  Claim # 4.  The Double Jeopardy claim.

Petitioner claims that his sentences for both first-degree felony murder and armed robbery violate the Double Jeopardy Clause.  Respondent contends that the claim is defaulted because petitioner failed to object at trial and the Michigan Court of Appeals relied on this failure to reject petitioner's claim. *Collins,* Slip. Op. at * 13.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).  If petitioner fails to show

cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986).  However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986).  However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  Actual innocence, which would permit collateral review of a procedurally defaulted claim, means factual innocence, not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998).

The Michigan Court of Appeals clearly indicated that by failing to object at trial, petitioner had not preserved his Double Jeopardy claim.  The fact that the Michigan Court of Appeals engaged in plain error review of petitioner's claim does not constitute a waiver of the state procedural default. *Seymour v. Walker,* 224 F.3d 542, 557 (6th Cir. 2000).  Instead, this Court should view the Michigan Court of Appeals' review of petitioner's claim for plain error as enforcement of the procedural default.  *Hinkle v. Randle,* 271 F.3d 239, 244 (6th Cir. 2001).  Petitioner's fourth claim is procedurally defaulted.

Petitioner has failed to allege any reasons to excuse his procedural default.  Although ineffective assistance of counsel may be cause to excuse a procedural default, that claim itself must be exhausted in the state courts.  *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  Although petitioner raised several ineffective assistance of

-17-

counsel claims in the state courts, petitioner did not raise a claim that counsel was ineffective for failing to preserve the Double Jeopardy issue.  Because petitioner never raised in the Michigan courts a specific claim about trial counsel's failure to object to the alleged Double Jeopardy violation, any alleged ineffectiveness of counsel cannot constitute cause to excuse petitioner's default with respect to his fourth claim. *See Wolfe v. Bock,* 412 F. Supp. 2d 657, 684 (E.D. Mich. 2006).  Because petitioner has not demonstrated any cause for his procedural default, it is unnecessary to reach the prejudice issue regarding these prosecutorial misconduct claims. *Smith*, 477 U.S. at 533.

Additionally, petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider his Double Jeopardy claim as a ground for a writ of habeas corpus in spite of the procedural default.  Petitioner's sufficiency of evidence claim (Claim # 1, *supra*) is insufficient to invoke the actual innocence doctrine to the procedural default rule. *See Malcum v. Burt,* 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003).  Because petitioner has not presented any new reliable evidence that he is innocent of these crimes, a miscarriage of justice will not occur if the Court declined to review petitioner's fourth claim on the merits. *See Harris v. Stegall*, 157 F. Supp. 2d 743, 751 (E.D. Mich. 2001).  Petitioner's fourth claim is procedurally barred.

### E.  Claims # 5 and # 6.  The ineffective assistance of trial and appellate counsel.

Petitioner contends that he was denied the effective assistance of trial and appellate counsel.

-18-

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance.  *Id.*  In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy.  *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense.  *Id.*  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance.  *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).  The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel.  *See Whiting v. Burt,* 395 F.3d 602, 617 (6th Cir. 2005).

In his fifth claim, petitioner first contends that his trial counsel was ineffective for failing to call three of Darryl Thomas' cellmates at the Wayne County Jail to provide testimony that Thomas had testified falsely regarding petitioner's confession to the murder.

Under *Strickland*, a court must presume that decisions by counsel as to whether to call or question witnesses are matters of trial strategy. *See Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002). The three proposed witnesses were all inmates at the Wayne County Jail who themselves would have been of questionable credibility. In light of the fact that these three men's credibility could have been called into question on a number of points had they testified, counsel was not ineffective in failing to call them as witnesses. *See Smith v. Jago,* 888 F.2d 399, 409 (6th Cir. 1989)*; Randle v. Jackson,* 544 F. Supp. 2d 619, 633 (E.D. Mich. 2008).

Moreover, counsel's failure to impeach Thomas' testimony with his three cellmates' proposed testimony did not prejudice petitioner, in light of the fact that a variety of other evidence which impeached Thomas' credibility was admitted at trial, coupled with the fact that there was other evidence which incriminated petitioner in this case. *See Wolfe v. Bock,* 412 F. Supp. 2d at 677 (any deficiency by trial counsel in failing to seek tape recording of informant's statement or to impeach informant with his inmate status did not undermine confidence in outcome of the case, since a variety of other impeachment evidence was admitted, and other witnesses testified to same incriminating facts as did informant).

Petitioner next claims that trial counsel was ineffective for failing to challenge the mental competency of Lula Vaughn based on medical records which describe her as being delusional and suffering from disorganized thought patterns. The records also show that Vaughn was attending counseling sessions, which were designed to "provide reality orientation."

-20-

Under M.R.E. 601, all witnesses are presumed to be competent to testify. *People v. Watson,* 245 Mich. App. 572, 583, 629 N.W. 2d 411 (2001).  The test of the competency of a witness to testify is whether the witness has the capacity and sense of obligation to testify truthfully and understandingly.  *Id.*  A court may declare a witness incompetent only if it finds that the witness lacks the capacity or ability to state the truth. *Id.*  The mere fact that Vaughn had been diagnosed as being delusional with disorganized thought patterns would be insufficient in and of itself to render her incompetent to testify as a witness against petitioner, so long as Vaughn was minimally capable of telling the truth. *See e.g. United States v. Phibbs,* 999 F.2d 1053, 1068-70 (6th Cir. 1999).  Petitioner was not prejudiced by trial counsel's alleged failure to challenge Vaughn's mental capacity, because he has failed to present any evidence to overcome the presumption that Vaughn was competent to testify. *See Mitchell v. Kemna,* 109 F.3d 494, 495-96 (8th Cir. 1997).

Petitioner next claims that trial counsel was ineffective for failing to call Nancy Andritsis as an alibi witness.

Petitioner failed to attach any sworn affidavit from Ms. Andritsis to the motion for relief from judgment that he filed with the state court, not has he provided this Court with any affidavit from this witness concerning her proposed testimony and willingness to testify on the petitioner's behalf. [6]  Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See*

---

[6]  Petitioner did attach an unsworn and unauthenticated affidavit purporting to be from Ms. Andritsis to the application for leave to appeal that he filed with the Michigan Supreme Court. [Dkt. # 19-18].  However, this affidavit is unauthenticated and thus cannot be used to prove petitioner's ineffective assistance of counsel claim. *See Clark v. Waller,* 490 F.3d at 553, 558.

*Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998).  By failing to present any evidence

to the state courts in support of his ineffective assistance of claim, petitioner is not

entitled to an evidentiary hearing on his ineffective assistance of counsel claim with this

Court. *See Cooey v. Coyle*, 289 F.3d 882, 893 (6th Cir. 2002)(citing 28 U.S.C. §

2254(e)(2)(A)(ii)).  Petitioner has offered, neither to the Michigan courts nor to this

Court, any evidence beyond his own assertions as to whether Ms. Andritsis would have

been able to testify and what the content of her testimony would have been.  In the

absence of such proof, petitioner is unable to establish that he was prejudiced by

counsel's failure to call this witness to testify at trial, so as to support the second prong

of an ineffective assistance of counsel claim.  *See Clark v. Waller,* 490 F.3d 551*,* 557

(6th Cir. 2007).

Petitioner next claims that trial counsel was ineffective for failing to request a

cautionary accomplice instruction.

In *Krist v. Foltz*, 804 F.2d 944, 947 (6th Cir. 1986), the Sixth Circuit regarded a

criminal defense attorney's failure to request an accomplice instruction as being

"insignificant," where the witness's "unsavory past and his motive for naming the

defendant as his companion in crime were fully developed by counsel on

cross-examination."

In this case, petitioner's defense counsel extensively cross-examined Vaughn

and brought the problems with her testimony to the jury's attention in his closing

argument.  Counsel's failure to request a specific instruction on accomplice testimony

this did not rise to the level of ineffective assistance of counsel and would not entitle

petitioner to habeas relief.  *Krist,* 804 F.2d at 947.

Petitioner further contends that counsel was ineffective for failing to object to the prosecutor committing misconduct by improperly vouching for his witness.

To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different. *Hinkle v. Randle,* 271 F.3d 239, 245 (6th Cir. 2001). Because the Court has already determined that the prosecutor's comments did not deprive petitioner of a fundamentally fair trial, petitioner is unable to establish that he was prejudiced by counsel's failure to object to these remarks. *See Slagle v. Bagley,* 457 F.3d 501, 528 (6th Cir. 2006).

Petitioner lastly claims that his trial counsel was ineffective for failing to objecting to being denied his right to the counsel of his choice at sentencing. At the time of sentencing, petitioner's appointed counsel, William Winters, advised the trial judge that petitioner's family had retained another attorney, David Cripps, to represent him, although he was not sure whether it was for sentencing or post-conviction matters. Mr. Winters informed the judge that he had unsuccessfully attempted to contact Mr. Cripps that morning. Mr. Winters asked that the sentencing be adjourned for a week or two to determine whether Mr. Cripps was going to file an appearance to act as counsel at petitioner's sentencing. (Tr. 2/16/07, pp. 3-4). The trial judge denied the request, indicating that no appearance had been filed by Mr. Cripps, so the sentencing was going to proceed. (*Id.,* p. 4).

Petitioner's appointed trial counsel brought the issue of the possible hiring of Mr. Cripps to represent petitioner at sentencing to the judge's attention and the judge

indicated that the court had not received an appearance from Mr. Cripps and she was going to proceed with sentencing.  Because the judge had already indicated that she was going to proceed with sentencing, even after being advised that Mr. Cripps might be getting retained to represent petitioner at sentencing, it would have been futile for counsel to object further.  Trial counsel was not ineffective for failing to raise a futile objection. *See U.S. v. Johnson*, 9 Fed. Appx. 373, 374 (6th Cir. 2001)(citing *McQueen v. Scroggy*, 99 F.3d 1302, 1328 (6th Cir. 1996)).  Petitioner is not entitled to relief on his fifth claim.

In his sixth claim, petitioner contends that appellate counsel was ineffective for failing to raise his ineffective assistance of trial counsel claims on his appeal of right.

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985).  However, court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  This Court has already determined that petitioner's ineffective assistance of trial counsel claims are without merit.  "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010)(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).  Because none of these claims can be shown to be meritorious, appellate counsel was not ineffective in his handling of petitioner's direct appeal.  Petitioner is not entitled to habeas relief on his ineffective assistance of appellate counsel claim.

### IV.  Conclusion

-24-

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability to petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484. When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id.*  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right.  *Myers v. Straub,* 159 F. Supp. 2d 621, 629 (E.D. Mich. 2001).  The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Id.*

### V. ORDER

IT IS ORDERED that the Petition for a Writ of Habeas Corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a Certificate of Appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma pauperis*.

Dated:  September 26, 2014

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on September 26, 2014, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---